IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

JANE A. WALSWORTH,

                    Plaintiff,

Vs.                                          No.  20-2395-SAC-TJJ

MEDTRONIC, INC., MEDTRONIC
USA, INC., MEDTRONIC MINIMED,
INC., MINIMED DSTRIBUTION
CORP., and MICHELLE PRICE,

                    Defendants.


MEMORANDUM AND ORDER

       The case comes before the court on the plaintiff Jane

Walsworth's motion to remand this case to the District Court of Johnson

County, Kansas, from which it was removed. ECF# 10. The defendants

Medtronic, Inc., Medtronic USA, Inc., Medtronic MiniMed, Inc., and MiniMed

Distribution Corp. (collectively, "Medtronic") removed this product liability

action alleging federal diversity jurisdiction in that there is complete diversity

of citizenship between the plaintiff and the Medtronic defendants, that the

defendant Michelle Price is fraudulently joined making her citizenship

immaterial, and that the amount in controversy exceeds the jurisdictional

amount. ECF# 1. The plaintiff moves to remand disputing the linchpin to

removal, that is, whether the defendant Price is fraudulently joined.

Walsworth filed this action in state court seeking to recover damages sustained from an overdose of insulin on July 31, 2018. She alleges that her physicians installed on her a Medtronic MiniMed 670G insulin pump in April of 2018 at St. Luke's South Hospital in Overland Park, Johnson County, Kansas, which caused this overdose of insulin. Specifically, the complaint alleges this model of Medtronic insulin pump installed on the plaintiff was recalled in November of 2019 "for a retainer ring defect which allowed the infusing and/or dispersing of incorrect amounts of insulin into patients." ECF# 1-1, ¶ 15. It is also alleged that the Medtronic unit's safety alarm system has a "built-in safety function that is supposed to occur and alert at the early onset of a high or low blood sugar event" and that it did not alert. *Id*. at ¶ 14.

The complaint asserts three counts against all defendants. First, a strict product liability claim is brought on the product being defective and unreasonably dangerous for its ordinary and expected use in allowing an overdose of insulin. Second, as established by the plaintiff's overdose and by the subsequent product recall, there are breaches of the express warranty that the pump was safe and beneficial for controlling diabetes and of an implied warranty of merchantability and/or fitness for a particular purpose. Third, for the duty "to use reasonable care in the design, manufacture, promotion, marketing and sale of their products . . . to ensure that the

products worked properly and for their intended use," the plaintiff includes

13 breaches of this duty. *Id.* at ¶ 27.

Specific to the individual defendant Price, the plaintiff's

complaint alleges the following. Price is "a Medtronic Senior Territory

Manager (sales rep.)" who resides in Overland Park, Kansas. She "marketed

and promoted the Medtronic insulin pump Plaintiff was using to healthcare

providers including St. Luke's South." ECF# 1-1, ¶ 7. On the same day that

the pump was installed, Price met with the plaintiff advising her on using the

pump. *Id.* at ¶¶ 7, 10. "At all times relevant herein Defendant Price was

acting within the course and scope of her employment and/or agency with

Medtronic." *Id.* at ¶ 8. As part of count three, the plaintiff alleges at ¶ 28

that Medtronic and Price "had the duty as a medical device manufacturer,

marketer and/or distributer to warn St. Luke's South, Plaintiff's physicians

and Plaintiff that there were thousands of adverse events that caused death

and serious injuries to patients linked to the unreasonably dangerous"

insulin pump and also "[t]housands of reports of insulin overdose and

malfunction were coming in prior to the formal recall and prior to Plaintiff's

use of the product beginning in April of 2018."

In arguing for fraudulent joinder of Price in their notice of

removal, Medtronic posits that the plaintiff cannot possibly establish an

action against Price because the complaint fails to allege the existence of

any duty and its violation by Price that is independent of the allegations

against Medtronic. As for the negligence allegations in count three, Medtronic contends the plaintiff fails to allege that Price had knowledge of prior adverse events or reports or that she had an independent duty to warn of them. Medtronic attaches an affidavit from Price describing her limited interaction with patients, her provision of information exclusively from Medtronic, and her notification and provision of any product safety notices at the time of their issuance. ECF# 1-3, ¶¶ 3-5.

A defendant may remove a state civil action if the federal court would have had original jurisdiction over it. 28 U.S.C. § 1441(a). "Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State." *Lincoln Property Co. v. Roche*, 546 U.S. 81, 84 (2005). The party invoking diversity jurisdiction must show complete diversity of citizenship between adverse parties. *Dutcher v. Matheson*, 733 F.3d 980, 987 (10th Cir. 2013). Walsworth's state court complaint alleges there is no diversity jurisdiction because the plaintiff and the defendant Price are both citizens of Kansas. ECF# 1-1, ¶ 9.

"When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Henderson v. Washington Nat. Ins. Co.*, 454

4

F.3d 1278, 1281 (11th Cir. 2006).  In effect, the non-diverse defendant is said to have been fraudulently joined, and so her citizenship is "ignored for the purposes of assessing complete diversity." *Dutcher*, 733 F.3d at 988 (citation omitted). Medtronic bears a heavy burden in proving fraudulent joinder:

> "To establish [fraudulent] joinder, the removing party must demonstrate either:  (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Cuevas v. GAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011). "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 461 (2d Cir. 1998).

733 F.3d at 988.

This burden can be further broken down into following propositions:

> In general, the removing party must show that the plaintiff has "no cause of action" against the fraudulently joined defendant. *See id.* [*Dodd v. Fawcett Pubs., Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)]; *Roe v. Gen. Am. Life Ins. Co.*, 712 F.2d 450, 452 n. * (10th Cir. 1983). The objective, however, is not to pre-try the merits of the plaintiff's claims. As the Third Circuit put it, "[a] claim which can be dismissed only after an intricate analysis of state law is not so wholly insubstantial and frivolous that it may be disregarded for purposes of diversity jurisdiction." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 853 (3d Cir. 1992). But neither is the court compelled to believe whatever the plaintiff says in his complaint. Rather, "upon allegations of fraudulent joinder designed to prevent removal, federal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal." *Smoot v. Chicago, Rock Island and Pac. R.R. Co.*, 378 F.2d 879, 881–82 (10th Cir.1967).
>
> As this court has further explained: "the 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial

parties to the controversy. Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Lenon v. St. Paul Mercury Ins. Co.*, 136 F.3d 1365, 1369 (10th Cir.1998) (internal quotation marks omitted). Upon consideration, we have determined that none of Brazell's claims stated a cause of action against Waite as a real or substantial party to the controversy.

*Brazell v. Waite*, 525 Fed. Appx. 878, 881, 2013 WL 2398893, at *3 (10th Cir. 2013)(unpub.).

Because fraudulent joinder assertions attack the complaint's allegations, the Tenth Circuit has instructed courts to "pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Dodd v. Fawcett Pubs., Inc.*, 329 F.2d at 85. And in carrying out this function, courts "must decide whether there is a reasonable basis to believe the plaintiff might succeed in at least one claim against the non-diverse defendant." *Nerad v. AstraZeneca Pharmaceuticals, Inc.*, 203 Fed. Appx. 911, 913, 2006 WL 2879057, at *2 (10th Cir. 2006) (unpub.). "A 'reasonable basis' means just that:  the claim need not be a sure-thing, but it must have a basis in the alleged facts and the applicable law." *Id*. "In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party. We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned." *Montano v. Allstate Indemnity*, 211 F.3d 1278, 2000 WL 525592 at *1-*2

(10th Cir. Apr. 14, 2000) (unpub.) (quoting *Hart v. Bayer Corp.*, 199 F.3d
239, 246 (5th Cir. 2000)).

In seeking remand, the plaintiff contends she has brought a
good-faith action against Price as a Medtronic sales representative on a duty
of care she owed to the plaintiff. The plaintiff asserts this duty arose from
Price's actions in marketing and promoting this insulin pump to physicians
and in failing to give adequate warning to the plaintiff about "the health risks
caused by insulin pumps, including overdosage of insulin by the insulin pump
device itself." ECF# 1-1, ¶ 27(i); ECF# 10, p. 4. The plaintiff alleges Price
was negligent in "continuing to market the insulin pump despite a large
number of adverse insulin overdosage reports coming in to Medtronic," and
in failing to respond reasonably to reports of adverse events "obtained by
Medtronic prior to April 2018 and Medtronic's formal recall in November
2019." ECF# 1-1, ¶¶ 27(f) and 27(l); ECF# 10, p. 4. The plaintiff further
alleges Price was negligent in not adequately warning her of the health risks
from insulin pumps, including possible overdoses. ECF# 1-1, ¶ 27(i), ECF#
10, p. 4.  The plaintiff argues these same allegations put forward a claim
recognized under Kansas law. Distinguishing her claim from those cases
cited by Medtronic, the plaintiff points to her allegations here that Price
advised and instructed her on the safe use of the insulin pump and that Price
also promoted and marketed the insulin pump at issue to the physicians at

St. Luke's. Price's personal involvement here establishes, in the plaintiff's judgment, a duty of care and the possibility of a cause of action.

Medtronic opposes remand arguing the plaintiff's allegations against Price fail to state a claim under Kansas law, including any claim for negligently failing to warn. Medtronic concedes it bears a heavy burden, "'the issue is not necessarily whether the plaintiff has stated a valid claim against the non-diverse defendant, but rather whether the defendant has proven the plaintiff's inability to state a claim in state court despite all legal and factual issues being decided in the plaintiff's favor.'" ECF# 13, p. 5 (quoting *Schehrer v. Smith & Nephew, Inc.*, No. 19-2003-JWL, 2019 WL 1002419, at *2 (D. Kan. 2019) (quoting in turn *Dutcher*, 733 F.3d at 989)). The court concludes that Medtronic has not carried this heavy burden.

"The Kansas Product Liability Act ('KPLA') governs 'all product liability claims regardless of the substantive theory of recovery.'" *Davison v. C.R. Bard, Inc.*, No. 19-2760-EFM, 2020 WL 2513069, at *3 (D. Kan. May 15, 2020) (quoting *Savina v. Sterling Drug, Inc.*, 247 Kan. 105, 795 P.2d 915, 931 (1990)). Medtronic first argues that defendant Price cannot qualify as a "product seller" under the KPLA in that she did not and could not sell the insulin pump to the plaintiff. The plaintiff Walsworth alleges that Price as "Medtronic Senior Territory Manager (sales rep.)" had "marketed and promoted the Medtronic insulin pump Plaintiff was using to healthcare providers including St. Luke's South" and that Price "advised Plaintiff on how

to use the pump when it was first installed on Plaintiff."  ECF# 1-1, ¶ 7. The

complaint fairly alleges that Price was in the business of marketing the sale

of insulin pumps to physicians who apparently prescribed them for their

patients and then Price arguably assisted the sales transaction by instructing

patients on the pumps. The KPLA defines the term, "product seller," to

include "any person or entity that is engaged in the business of selling

products" and specifically mentions a "distributor." K.S.A. 60-3302(a).

Applying Kansas product liability law, Judge Lungstrum recently rejected the

argument that a sales representative of a medical device manufacturer could

not be a product seller under the KPLA or under Kansas law:

> As quoted above, the KPLA defines "product seller" to include anyone
> engaged in the business of selling products and expressly includes
> distributors. S&N has not even attempted to explain why Mr. Swindle,
> as a matter of law, could not be considered a person engaged in the
> business of selling the BHR system. In *Cooper*, this Court conducted a
> thorough analysis, rejected the argument that the KPLA definition
> requires passing of title to the product, and concluded that the
> defendant had not shown that it was not possible that a claim under
> the KPLA could be stated against it in state court. *See Cooper*, [*v.
> Zimmer Holdings, Inc.*,], 320 F. Supp. 2d [1154] at 1157-62 [(D. Kan.
> 2004)]. S&N has not made any attempt to explain how this Court
> erred in that analysis or how the present case may be distinguished. In
> addition, plaintiff has alleged that Mr. Swindle was involved in the sale
> of the product in this case, and that allegation must be deemed true
> for purposes of this analysis. Accordingly, the Court rejects this
> argument by S&N based on the definition of "product seller."
>
> In addition, even if Mr. Swindle could not be considered a "product
> seller" under the KPLA, that fact would not necessarily mean that
> plaintiff could not pursue a product liability claim against Mr. Swindle
> under Kansas law. As this Court noted in *Cooper*, the KPLA may
> merely limit the liability of "product sellers" without foreclosing product
> liability claims against other defendants. *See id.* at 1158 n.7. Indeed,
> the Kansas Supreme Court has quoted that analysis from Cooper with

9

seeming approval. *See Gaumer v. Rossville Truck and Tractor Co.*, Inc., 292 Kan. 749, 757-58 (2011) (quoting *Cooper*, 320 F. Supp. 2d at 1158 n.7). S&N has not addressed that issue in opposing remand. That legal issue must be resolved in plaintiff's favor in this analysis, and for this reason as well, S&N has not shown that plaintiff could have no product liability claim against Mr. Swindle.

*Schehrer v. Smith & Nephew, Inc.*, 19-2003-JWL, 2019 WL 1002419, at *3 (D. Kan. Mar. 1, 2019). The court is not persuaded by Medtronic's effort to distinguish *Schehrer* based on the sales representative there providing advice on the choice of the device. The decision in *Schehrer* does not hang its ruling on the sales representative having advised the buyer on which device to choose. Nor does the *Schehrer* ruling exclude other possible "sales" involvement by a sales representative. In the case at hand, the plaintiff alleges Price directly marketed the insulin pump to physicians responsible for selecting and prescribing equipment for patients based in part on the sales representative's marketing efforts. The plaintiff also alleges that Price played a contemplated role in the sales transaction in that she was present following the installation to instruct patients on the proper use of the purchased equipment. Following *Schehrer*, the court rejects this argument that the question whether the defendant Price qualifies as a "seller" under the KPLA necessarily precludes the plaintiff from bringing a claim against Price.

Medtronic next argues that the plaintiff cannot bring a claim against Price because she is shielded from liability under the "intermediate seller defense" in the KPLA. It is the product seller's burden to establish all

five elements to this affirmative defense, two of which are that the "seller
had no knowledge of the defect" and that "such seller in the performance of
any duties the seller performed, or was required to perform, could not have
discovered the defect while exercising reasonable care." K.S.A. 60-
3306(a)(1) and (2). Medtronic argues the plaintiff's petition does not allege
that Price was aware or could have been aware of the adverse events or
complaints prior to the plaintiff's use of the insulin pump. On the weight of
these same factual arguments, Medtronic concludes the plaintiff cannot
allege any duty on Price that she violated which is independent of
Medtronic's duties as the manufacturer and seller.

  The plaintiff's petition plainly alleges that many "reports of
insulin overdose and malfunction were coming in . . . prior to Plaintiff's use
of the product beginning in April of 2018." ECF# 1-1, ¶ 28. This allegation is
made against all named defendants. Therefore, the knowledge of the
defendant Price "presents a clear question of fact, and all factual disputes
must be decided in plaintiff's favor for purposes of the jurisdictional
analysis." *Schehrer*, 2019 WL 1002419, at *4. The court is to resolve all
disputed questions of fact and all ambiguities in the controlling law in favor
of the non-removing party.

  More importantly, Medtronic has not come forward with evidence
or argument on which this court can discredit the allegation of knowledge,
particularly when the defendant Price's affidavit is carefully worded only to

deny a "role in tracking patient complaints" and only to deny advance knowledge of "product safety notifications." ECF# 1-3, ¶¶ 3 and 5. These carefully worded averments are what make this case distinguishable from the decisions cited by Medtronic. *See, e.g., Elrod v. Bayer Corporation*, 2020 WL 4284416, at *1 (N.D. Ill. Ju. 27, 2020). Neither averment on its own or together necessarily cut off the possibility of the plaintiff proving Price knew or could have known of the defect and/or consumer complaints from knowledge gained in the performance of her other job duties. Specifically, Price's role as Senior Clinical Territory Manager presumably entailed interacting with physicians and hospitals and with knowledgeable superiors from Medtronic about all relevant aspects of the pump's operation and success in the consumer health market.

At this junction of the litigation, the court cannot say the plaintiff lacks a reasonable factual or legal basis for bringing a cause of action against Price. She was directly and affirmatively involved in making representations to the physicians, in meeting with the plaintiff, and in giving instructions to the plaintiff on the pump's intended use and features. Her involvement would necessarily include assurances and instructions over features that may have been defective, including the pump's ability to inject a correct flow of insulin that controlled her blood glucose and the pump's ability to set off an audible alarm to indicate a low blood sugar episode. These allegations taken on their face distinguish this case from *Culbertson v.*

*Great Wolf Lodge of Kansas City, LLC*, No. 16-2297, 2016 WL 6822656 (D.

Kan. Nov. 18, 2016); *Boyce v. Wal-Mart Stores, Inc.*, No. 16-2221-JWL,

2016 WL 2941339 (D. Kan. May 20, 2016). The court is not saying that the

plaintiff's claim is "a sure-thing" but the complaint alleges some basis both in

law and fact for a claim. *Nerad*, 203 Fed. Appx. at 913. Resolving the

disputed questions of fact in the plaintiff's favor, the court rejects

Medtronic's arguments for fraudulent joinder based on the intermediate

seller defense, the lack of a duty to warn, and the lack of an independent

duty.

　　　　Thus, Medtronic has failed to carry its heavy burden of showing

that the plaintiff has no possibility of establishing, in law or fact, a cause of

action against the defendant Price. Because Medtronic has not demonstrated

that Price was fraudulently joined, this case must be remanded to state

court for lack of complete diversity of citizenship.

　　　　The plaintiff has filed a separate motion for sanctions

"[p]ursuant to FRCP 11 and Local Rule 11.1 . . . due to Defendants'

inappropriate Removal of this case and 'inappropriate' use of *Cooper v.*

*Zimmer Holdings, Inc.*, 320 F.Supp.2d 1154 (D. Kan. 2004), and *Schehrer v.*

*Smith & Nephew, Inc.*, No. 19-2003-JWL, 2019 WL 1002419 (D. Kan. Mar.

1, 2019), to support removal." ECF# 15. Because the plaintiff's motion for

sanctions does not show compliance with the requirements of Fed. R. Civ. P.

11(c)(2), it must be denied. *See Roth v. Green*, 466 F.3d 1179, 1192-93 (10th Cir. 2006), *cert. denied*, 552 U.S. 814 (2007).

IT IS THEREFORE ORDERED that the plaintiff Walsworth's motion to remand this case to the District Court of Johnson County, Kansas, (ECF# 10) is granted. The Clerk of the Court shall mail a certified copy of this remand order to the Clerk of the District Court of Johnson County, Kansas.

IT IS FURTHER ORDERED that the plaintiff Walsworth's motion for sanctions (ECF# 15) is denied.

Dated this __9th__ day of October, 2020, Topeka, Kansas.


_/s Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge